IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-03447-CMA

FELICIA WEBB,

    Plaintiff,

v.

ROBIN GREGORY,

    Defendant.

**ORDER DENYING PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND DISMISSING ACTION**

This matter is before the Court on Plaintiff Felicia Webb's Verified Complaint and Request for a Forthwith Order for a Temporary Restraining Order and Preliminary Injunction Enjoining Defendants from Holding a Sheriff's Sale on December 9, 2019; and Complaint for Declaratory Relief (Doc. # 1). This case arises out of Plaintiff's dissatisfaction with a Colorado state court's judgment in favor of Defendant Robin Gregory ("Mr. Gregory") which set aside, as a fraudulent conveyance, a purported transfer of real property located at 515 Skyline Drive, Ouray, CO 81427. Because the *Rooker-Feldman* doctrine prohibits federal district courts from modifying or setting aside state court judgments, Plaintiff's Motion is denied, and her action is dismissed.

## I.     BACKGROUND

This case concerns real property located at 515 Skyline Drive, Ouray, CO 81427 (the "Property"). (Doc. # 1 at 25.) Although Plaintiff's Complaint sets forth vague and conclusory factual allegations, from the pleadings and corresponding exhibits, the Court gleans the following background relating to the Property.

On October 18, 2005, David Webb allegedly established the Define Living Trust ("Define Trust"). (Doc. # 1 at 22.) The instrument governing the Define Trust provides that David Webb signed as trustee of the Define Trust; and his apparent signature also appears above the "Grantor" line. (*Id.*) On April 6, 2007, the Spirit Mountain Trust ("Spirit Trust") purportedly transferred the Property to the Define Trust ("April 2007 Transfer") through an unrecorded quitclaim deed that was executed between Spirit Trust trustee Nicholas Webb and Define Trust trustee David Webb ("Quitclaim Deed"). (*Id.* at 28–29.)

On March 27, 2012, the Define Trust trustee executed the First Amendment to the Define Trust (*id.* at 30), which designated Plaintiff as the sole beneficiary of the Define Trust, converted the Define Trust from revocable to irrevocable, and added the following condition:

> At age 25, beneficiary reserves the right to revoke the Trust without cause, and may withdraw assets from the trust. In all other respects, the Define Living Trust dated October 18, 2005, shall remain in full force and effect.

(*Id.*) On April 1, 2019, Plaintiff recorded the Quitclaim Deed with the Ouray County Clerk and Recorder. (*Id.* at 4, ¶17, 28.)

Prior to Plaintiff's recordation of the Quitclaim Deed, Mr. Gregory was a Third-Party Plaintiff, and David Webb, Nicholas Webb, and Nicholas Webb in his capacity as

trustee of Spirit Trust were Third-Party Defendants in a civil case commenced in the Colorado State District Court for Ouray County ("Colorado State Court"). (*Id.* at 34–37); *Gregory v. Webb et. al.*, Case No. 2016CV30012 (Colo. Dist. Ct. 2016) ("Colorado State Action"). On August 2, 2019, the Colorado State Court entered judgment[1] in favor of Mr. Gregory, and against David Webb, Nicholas Webb, and Nicholas Webb in his capacity as Spirit Trust trustee, finding that the April 2007 Transfer of the Property was a fraudulent conveyance. (Doc. # 1 at 34.)

As permitted under Colorado's fraudulent conveyance statute, Mr. Gregory obtained a writ of attachment on the Property on August 14, 2019, pursuant to which he was authorized to "proceed with the process for a Sheriff's sale and the Ouray County Sheriff [was] ordered to and authorized to take [the Property] and commence a Sheriff's sale" in accordance with the "statutory procedures to conduct a Sheriff sale of the [Property.]" (*Id.* at 36–37.)

On October 31, November 7, 14, 21, 28, and December 5, 2019, Ouray County Sheriff Lance P. Fitzgerald published a Sheriff's Notice of Sale regarding sale of the Property in the *Ouray County Plaindealer*. (*Id.* at 31.) The Notice of Sale provided that under "the Order and Writ of Attachment entered on August 15, 2019, [he was] ordered to sell" the Property on December 9, 2019, at 10:00 AM, at the Ouray County Sheriff's Office. (*Id.*) Mr. Gregory's counsel in the Colorado State Action certified that, on October

---

[1] Previously, on June 5 and 6, 2019, judgments were entered in favor of Mr. Gregory and against David Webb, Nicholas Webb, and Nicholas Webb in his capacity as Spirit Trust trustee, jointly and severally in the amount of $504,878.61, plus interest at the rate of 8% per annum. (Doc. # 1 at 38.)

3

29, 2019, notice of the Sheriff's sale of the Property was sent to David Webb, Nicholas Webb, Nicholas Webb as trustee for Spirit Trust, and David Webb as trustee for Define Trust. (*Id.* at 24–27.)

Plaintiff waited until 8:04 a.m. on December 9, 2019, to file her Verified Complaint and Request for TRO and Preliminary Injunction. (*Id.* at 1.) Therein, she asserts two claims for relief: (1) a temporary restraining order and preliminary injunction that will enjoin the sale of the Property; and (2) declaratory relief for which this Court will declare that Mr. Gregory and Park Estates Homeowner's Association do not have a legal right to a Sheriff's sale of the Property, that Plaintiff and the Define Trust own the Property, and a proclamation of Plaintiff's rights to the Property under the Define Trust. (*Id.* at 7–9.) Plaintiff argues that the Colorado State Court's numerous errors justify this relief. For the following reasons, the Court denies Plaintiff's Motion and dismisses her action for lack of subject matter jurisdiction.

## II. <u>LEGAL STANDARD</u>

### A. PRO SE LITIGANT

As a preliminary matter, the Court notes that Plaintiff initiated this lawsuit as a *pro se* litigant. The Court, therefore, reviews her pleading "liberally and hold[s] [it] to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (a court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). Nor does *pro se* status entitle a litigant to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

**B.  ROOKER-FELDMAN DOCTRINE**

The *Rooker-Feldman*[2] doctrine prohibits a "federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have led to that judgment." *Mayotte v. U.S. Bank Nat'l Assoc., as Trustee, for Structured Asset Inv. Loan Tr. Mortg. Pass Through Certificates, Series 2006-4 et. al.*, 880 F.3d 1169, 1174 (10th Cir. 2018) (emphasis in original) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp. [SABIC]*, 544 U.S. 280, 291 (2005)). Pursuant to the *Rooker-Feldman* doctrine, federal district courts are precluded from conducting appellate review of state court judgments. *Exxon Mobil Corp.*, 544 U.S. at 284 (reasoning that federal district courts lack the "requisite appellate authority" to "reverse or modify" a state court judgment); *see also Mann v. Boatright*, 477 F. 3d 1140, 1146 (10th Cir. 2007) (quoting *Bolden v. City of Topeka*, 441 F.3d 1129,1143 (10th Cir. 2006) ("Appellate review—the type of

---

[2] The doctrine is named for the decisions in *District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 463 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

judicial action barred by *Rooker-Feldman*—consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law.")). Following the United States Supreme Court's lead in *Exxon Mobil*, the Tenth Circuit recognized that "[t]he essential point is that barred claims are those 'complaining of injuries caused by state-court judgments.'" *Mayotte*, 880 F.3d at 1169 (citing *Campbell v. City of Spencer*, 682 F.3d 1278, 1280 (10th Cir. 2012) (quoting *Exxon Mobil Corp.*, 544 U.S. at 284)). "[T]here would be a *Rooker-Feldman* issue if the federal suit alleged that a defect in the state proceedings invalidated the state judgment." *Id.* at 1175.

However, the *Rooker-Feldman* doctrine "does not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment." *Id*. at 1173. Indeed, seeking "relief that is *inconsistent* with the state-court judgment is a different matter, which is the province of preclusion doctrine." *Id.* at 1174–75. *Rooker-Feldman* bars a plaintiff's federal-court claim only if "an element of the claim is that [a prior state-court] judgment was wrongful." *Id.* at 1175 (quoting *Campbell*, 682 F.3d at 1284). As such, if there is "no need to set aside, or even consider the validity" of a state court decision for a plaintiff to establish her claim, whether the state court judgment was wrongful is not an element of that claim. *Id.* at 1176.

Additionally, *Rooker-Feldman* also bars federal district courts from considering "claims inextricably intertwined with a prior state-court judgment." *Tal v. Hogan*, 453 F.3d 1244, 1256 (10th Cir. 2006); *see also Dist. of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 483 n.16 (1983). A claim is inextricably intertwined if "the state-court

6

judgment *caused*, actually and proximately, the *injury* for which the federal-court plaintiff seeks *redress*." *Tal*, 453 F.3d at 1256 (emphasis in original) (applying *Rooker-Feldman* doctrine to bar plaintiff's claims for monetary damages against government actors and private individuals for alleged violations of constitutional rights caused by parties' compliance with probate court's orders where claims "would require the district court to review and reject those judgments" and as such, plaintiff's "claims [were] inextricably intertwined with the probate court judgments").

### III.     ANALYSIS

The *Rooker-Feldman* doctrine bars the instant action because Plaintiff seeks to "set aside" the Colorado State Court's decision. Indeed, Plaintiff's Complaint and Motion are replete with references to alleged defects underlying the Colorado State Court's decision. Plaintiff alleges:

- That the Colorado State Court "failed to understand that a trust cannot be represented pro se in court and" erred when it "allowed the case to be tried without notice of this fact to David and Nicholas Webb[,]" who were parties to the Colorado State Action (Doc. # 1 at ¶ 9);

- That the Spirit Trust, with her as the sole beneficiary and as a third party, "was not represented properly" in the Colorado State Action and at trial, and as such, the "Ouray County District Court erred in allowing this to happen" when it allegedly permitted the Spirit Trust trustee to represent the "trusts" (Spirit Trust and Define Trust) even though the trustee was not a licensed professional attorney (*id* at ¶ 16);

- That throughout the Colorado State Action, neither she nor the Define Trust "were served nor brought into the" Colorado State Action "that led to the proposed Sheriff's sale . . . as a party to that action" (*id.* at ¶¶ 13, 18), and as a result, the "State is taking and transferring my property without any notice or due process" (*id.* at ¶ 18);

- That it was "nonsensical" for the Colorado State Court to determine that the April 2007 Transfer of the Property was "fraudulent" (*id.* at ¶ 17); and

7

- That because the Spirit Trust was not legally represented in the Colorado State Action, "counsel for the defendants AND the district court judge knew or should have known that proceeding against the [Spirit Trust] without a lawyer was improper" (*id.* at ¶ 23).

These allegations formulate purported "defects in the state proceeding" that supposedly "invalidate[] the state judgment." *Mayotte*, 880 F.3d at 1175. Plaintiff's "direct attack[s] on the state court's judgment" are precisely what is barred under the *Rooker-Feldman* doctrine. *Id.* (quoting *Campbell*, 682 F.3d at 1284–85). As such, the Court declines to improperly engage in appellate review of the Colorado State Court judgments.[3] *Mann*, 477 F. 3d at 1146 (quoting *Bolden*, 441 F.3d at 1143).

Most importantly, Plaintiff incontrovertibly asserts that the underlying Colorado State Court judgment and "all subsequent orders which in any way purport to affect the ownership of the Property **must be set aside**." (*Id.* at ¶ 20 (emphasis added).) But *Rooker-Feldman* mandates this Court do no such thing. *Mayotte*, 880 F.3d at 1174 ("What *is* prohibited under *Rooker-Feldman* is a federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have led to that judgment.") (emphasis in original); *Erlandson v. Northglenn Mun. Ct.*, 528 F.3d 785, 789 (10th Cir. 2008) (holding that complaint filed in a federal district court seeking review and reversal of state-court judgment is properly dismissed under *Rooker-Feldman*); *Bolden*, 441 F.3d at 1145 (illustrating that if a plaintiff "files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings

---

[3] The Court observes that Plaintiff is seeking to intervene in the Colorado State Action. (Doc. # 1 at 9, ¶ 39, 14–15.) This is a more appropriate vehicle for which Plaintiff may seek relief from the Colorado State Court judgments.

deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker-Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings"); *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1136–37 (D. Colo. 2019) (recognizing principle enunciated in *Mayotte* and holding that Rule 120 Order did not constitute a final judgment for purposes of applying the *Rooker-Feldman* doctrine); *Bishop v., JP Morgan Chase Bank, Nat'l Assoc.*, Case No. 17-cv-01188-RM-KLM, 2018 WL 4368614, at *3–4 (D. Colo. Mar. 6, 2018) (applying *Mayotte* principle and holding that plaintiff's unjust enrichment, due process, and equal protection claims were barred by *Rooker-Feldman* because those claims arose from alleged "defects" in Rule 120 proceeding); *Carlson v. Town of Mountain Village, Colo.*, Case No. 17-cv-02887-PAB-STV, 2019 WL 1331977, at * 3 (D. Colo. Mar. 25, 2019) (applying *Mayotte* principle and holding that plaintiff's RICO claims were not barred by *Rooker-Feldman* because plaintiff did "not request that the [c]ourt vacate her state convictions").

In similar vein, Plaintiff's claim for declaratory relief requesting this Court to exclude the Property from "any and all" of the Colorado State Court's judgments would require this Court to reverse the State Court's judgment relating to the fraudulent conveyance claim. The inability of this Court to furnish such relief was underscored in *Mayotte*. 880 F.3d at 1174. In *Mayotte*, after a plaintiff's alleged home was sold in a Colorado Rule of Civil Procedure 120 nonjudicial foreclosure, the plaintiff filed federal court claims for damages arising from defendant's misconduct, breach of a promissory

9

note, and to obtain a declaration that she has title to her home. *Id.* at 1171–72, 1176. The Tenth Circuit held that plaintiff's federal court claims were not barred by the *Rooker-Feldman* doctrine "because none of the claims . . . challenge[d] the Rule 120 proceedings or [sought] to set aside the Rule 120 ruling" and that the plaintiff could "prove her claims without any reference to the state-court proceedings." *Id.* at 1176. Indeed, "[a]ll of the facts [the plaintiff] alleged in the [c]omplaint preexisted the Rule 120 proceedings." *Id.* "[B]ecause there [was] no need to set aside, or even consider the validity of, the Rule 120 decision for [the] [p]laintiff to establish her claim," the *Mayotte* court could not "say that 'an element of the claim' [was] that the Rule 120 order was 'wrongful.'" *Id.* (quoting *Campbell*, 682 F.3d at 1284).

However, in this case, Plaintiff seeks reversal of the Colorado State Court judgment. The Sheriff's sale is a product of the Colorado State Court's judgment in favor of Mr. Gregory on his fraudulent conveyance claim. That judgment invalidated the April 2007 Transfer of the Property. Given Plaintiff's legion of attacks on the Colorado State Court's proceedings and judgments, this Court cannot determine her claims for declaratory relief[4] without referencing the Colorado State Action. Accordingly, Plaintiff's second claim for relief is barred under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine also bars Plaintiff's motion for a temporary restraining order and preliminary injunction because these claims are "inextricably

---

[4] The Court has questions as to whether Plaintiff has standing to assert any of these claims if Define Trust owns the Property. However, because Plaintiff is proceeding *pro se*, her allegations are liberally construed, and as such, for purposes of standing, the Court accepts Plaintiff's allegations that she owns the Property.

intertwined with a prior state-court judgment." *Tal*, 453 F.3d at 1256. Plaintiff seeks to enjoin Mr. Gregory and the Ouray County Sheriff's Department[5] "from continuing with a public sale" of the Property because such a sale would violate Plaintiff's due process rights. (Doc. # 1 at 8, ¶ 37, 10.) She alleges that a slew of procedural defects with the Sheriff's sale proceedings compromised her due process rights.[6] (*Id.* at ¶¶ 14–15.) However, a review of the record attached to Plaintiff's Complaint exudes that the Colorado State Court's final judgment "actually and proximately" caused the Sheriff's sale, the "injury for which" Plaintiff seeks redress with respect to her first claim. *Tal*, 453 F.3d at 1256 (emphasis omitted); (Doc. # 1 at 34–37). Indeed, attempting to remedy Plaintiff's injuries arising from violation of her due process rights caused by the Sheriff's compliance with the Colorado State Court's Order "would require the district court to review and reject" the Colorado State Court's judgments. *Tal*, 453 F.3d at 1256. *Rooker-Feldman* forecloses such action. *Id.*; *see also Bishop*, 2018 WL 4368614 at *3–4. Accordingly, Plaintiff's request to enjoin the Sheriff's sale of the Property is also barred under the *Rooker-Feldman* doctrine.

---

[5] The Court notes that Plaintiff failed to name the Ouray County Sheriff's Department or the Ouray County Sheriff as a defendant to this action. As such, this Court has no jurisdiction to issue an order that would be binding upon Ouray County Sheriff's Department or the Sheriff.
[6] These alleged defects included inadequate notice, failure to hold a requisite hearing, and Mr. Gregory's failure to file a motion posting bond and obtain an appraisal. (Doc. # 1 at ¶¶ 14–15.)

## IV.     CONCLUSION

For the foregoing reasons, it is

ORDERED that Plaintiff's Request for a Forthwith Order for a Temporary Restraining Order and Preliminary Injunction Enjoining Defendants from Holding a Sheriff's Sale on December 9, 2019 (Doc. # 1) is DENIED. It is

FURTHER ORDERED that this case be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(1).

DATED: December 12, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge